IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM T. JOHNAKIN III,                  :
                                          :
                        Plaintiff,        :          CIVIL ACTION NO. 22-2575
                                          :
            v.                            :
                                          :
OFFICER DROSDAK, WARDEN                    :
JEFFERY SMITH, and CHIEF DEPUTY            :
WARDEN STEPHANIE SMITH,                    :
                                          :
                        Defendants.        :

**MEMORANDUM OPINION**

Smith, J.                                                          July 8, 2022

The *pro se* plaintiff has applied for leave to proceed *in forma pauperis* in this civil action in which he claims that, while detained in a county jail, a female correctional officer entered his cell while he was using the bathroom and stayed in the cell with him until he had finished. He has asserted claims under the Prison Rape Elimination Act and for constitutional violations under 42 U.S.C. § 1983 against the female correctional officer and two of her supervisors. He asserts these claims against the defendants in their individual and official capacities.

As explained in more detail below, the plaintiff has failed to state any plausible claim for relief in the complaint. In particular, he may not maintain a private right of action under the Prison Rape Elimination Act because the Act does not provide for such a right. In addition, he has failed to include sufficient allegations to assert claims for any constitutional violations against the defendants in their individual or official capacities. Accordingly, while the court will grant the plaintiff leave to proceed *in forma pauperis*, the court will dismiss the complaint. The court will allow the plaintiff leave to file an amended complaint to the extent that he can state plausible claims regarding some of his asserted constitutional violations.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, William T. Johnakin III ("Johnakin"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), prisoner trust fund account statement, and complaint, which the clerk of court docketed on June 27, 2022. *See* Doc. Nos. 1–3. In the complaint, Johnakin alleges that on June 9, 2022, at 7:30 a.m., he covered the glass window of his cell door "indicating that [he] was using the toilet." Compl. at ECF p. 6, Doc. No. 2. The defendant, Officer Drosdak, who is female, opened Johnakin's cell door without knocking, looked at him, and said, "Are you using the bathroom? Hurry up I gotta search your cell[."] *Id.* According to Johnakin, Officer Drosdak offered no excuse or apology for entering his cell, and she watched as he finished using the toilet. *See id.*

Johnakin asserts that the June 9th incident was the third time that he has had an incident with Officer Drosdak in the past five years during periods when he was detained at the Berks County Jail ("BCJ").[1] *See id.* Johnakin avers that Officer Drosdak is "very disrespectful to all inmates and detainee's [sic] especially if your [sic] African American or Latino desent [sic]." *Id.*

In addition to naming Officer Drosdak as a defendant, Johnakin has identified BCJ Warden Jeffery Smith and Chief Deputy Warden Stephanie Smith as defendants. *See id.* at ECF pp. 1, 2–3. Johnakin claims that these defendants are responsible for Officer Drosdak's actions because they are her supervisors and allow her to purportedly violate inmates' rights despite knowing that she has been the subject of inmate grievances and complaints under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, *et seq. See id.* at ECF pp. 6–7.

Based on these allegations, it appears that Johnakin asserts claims under 42 U.S.C. § 1983 for the violation of his right to privacy, his PREA rights, and his rights under the Eighth and

---

[1] Johnakin does not specify the nature of the other incidents.

Fourteenth Amendments. *See id.* at ECF pp. 3, 5. He also appears to seek $500,000 in "actual damages" and $500,000 in punitive damages against each defendant. *See id.* at ECF p. 5.

## II.     DISCUSSION

### A.     The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States,* 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

3

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, Johnakin is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[2]

**B.      Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

---

[2] As Johnakin is currently incarcerated, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally"

(citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## C.     Analysis

Johnakin is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1.     Official Capacity Claims

Johnakin has named all defendants in their official as well as individual capacities. Claims against county-level officials named in their official capacities are indistinguishable from claims against the governmental entity that employs them, here, Berks County. *See Kentucky v. Graham*,

473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Based on the above, to plausibly assert a claim against the defendants in their official capacities, Johnakin must include sufficient allegations that would allow for liability against the municipality which employs the individual defendants, namely, Berks County. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[ ] pursuant to *Monell*."). To assert plausible claims against Berks County, Johnakin must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, Johnakin "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support an official capacity/municipal liability claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *McTernan*, 564 F.3d at 659 (explaining that paraphrasing elements, and formulaic recitation of elements do not suffice to state a claim for municipal liability); *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

> [t]here are three situations where acts of a government employee may be deemed
> to be the result of a policy or custom of the governmental entity for whom the
> employee works, thereby rendering the entity liable under § 1983. The first is where
> "the appropriate officer or entity promulgates a generally applicable statement of
> policy and the subsequent act complained of is simply an implementation of that
> policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The
> second occurs where "no rule has been announced as policy but federal law has
> been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom
> may also exist where "the policymaker has failed to act affirmatively at all, [though]
> the need to take some action to control the agents of the government 'is so obvious,
> and the inadequacy of existing practice is likely to result in the violation of
> constitutional rights, that the policymaker can reasonably be said to have been
> deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City
> of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412
> (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e]
> that the municipal action was taken with 'deliberate indifference' to its known or
> obvious consequences").

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in original)

(internal footnote omitted).

Here, Johnakin has failed to identify a policy or custom of Berks County, that the

defendants acted pursuant to that policy or custom, or that the policy or custom caused a

constitutional violation. Accordingly, the court will dismiss Johnakin's official capacity claims.

### 2.        Individual Capacity Claims

#### a.        PREA

Johnakin also asserts an individual capacity PREA claim against Officer Drosdak. The

court must also dismiss this claim because there is no private right of action to bring such a claim.

In this regard, "[w]hile the PREA was intended in part to increase the accountability of

prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners,

nothing in the language of the statute establishes a private right of action." *Walsh v. N.J. Dep't of

Corr.*, Civ. A. No. 17-2442 (JBS-AMD), 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see*

*also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) ("Insofar as Krieg argues that his rights under the Prison Rape Elimination Act of 2003 . . . were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape." (citations omitted)); *Frederick v. Snyder Cnty. Prison*, Civ. A. No. 3:18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) ("To the extent that Plaintiff attempts to raise a claim pursuant to the PREA, this claim must fail. The PREA does not provide a private right of action and Plaintiff is thus prohibited from asserting a claim pursuant to the PREA." (citations omitted)). Thus, Johnakin cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983." *Bowens v. Emps. of the Dep't of Corr.*, Civ. A. No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd sub nom.*, *Bowens v. Wetzel*, 674 F. App'x 133 (3d Cir. 2017). Moreover, to the extent Johnakin challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim" (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989)). Therefore, the court will dismiss with prejudice any claims for violations of the PREA.[3]

b.       Equal Protection Claim

---

[3] Additionally, because "prisoners have no legitimate expectation of privacy" in their cells, *see Hudson v. Palmer*, 468 U.S. 517, 530 (1984), *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001), the court can discern no other plausible constitutional claim arising from Johnakin's allegation that Officer Drosdak opened his cell door without knocking. The allegation that Officer Drosdak watched while Johnakin finished using the toilet does not state a plausible claim because it fails the "objectively serious misconduct" element of a prison sexual harassment claim. *See Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018) (holding that claims for prison sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing that the misconduct was "objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"); *see also Kuntz v. Wilson*, 33 F.3d 59 (9th Cir. 1994) ("Assignment of female prison guards to positions requiring only infrequent and casual observations of naked male prisoners does not violate the prisoners' privacy rights."). To the extent Johnakin raises these claims, they are dismissed with prejudice.

While not entirely clear, in asserting that Officer Drosdak is especially disrespectful to African American or Latino detainees, Johnakin may be attempting to allege an equal protection violation under the Fourteenth Amendment. To the extent he is attempting to do so, he has failed to state a plausible claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, an inmate must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of N.Y.*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).

Alternatively, a prisoner can assert an equal protection claim based on a "class of one" theory by alleging that he was intentionally treated differently from other similarly situated inmates and that there was no rational basis for the treatment. *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (stating that "to state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment"). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, Johnakin has not alleged that *he* is African American or Latino or that *he* was treated differently from other similarly situated detainees due to intentional discrimination based on *his*

membership in a protected class. Also, Johnakin's assertion that Officer Drosdak is disrespectful to African American and Latino detainees is insufficient to state a plausible equal protection violation. At bottom, since Johnakin has not alleged that he was treated differently than other similarly situated inmates or that he was in any way discriminated against based on his membership in a protected class he has not stated a plausible equal protection claim. *See, e.g., Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment"); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, [a plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties." (citations omitted)).

c.   Supervisory Liability Claims

Johnakin seeks damages from Warden Jeffery Smith and Chief Deputy Warden Stephanie Smith because they are Officer Drosdak's supervisors and allegedly know that she was the subject of inmate grievances and PREA complaints. The court will also dismiss this claim.

If a plaintiff such as *Johnakin* seeks to hold a supervisor liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).[4]

In the complaint, Johnakin does not allege that Warden Jeffery Smith or Chief Deputy Warden Stephanie Smith established and maintained with deliberate indifference a policy, practice, or custom which directly caused constitutional harm. As already stated, Johnakin fails to include any allegations about a policy. He also fails to allege that these defendants directly participated in violating his constitutional rights, directed Officer Drosdak to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinate's unconstitutional conduct. Furthermore, their alleged knowledge that Officer Drosdak has been accused of PREA violations by other inmates fails to assert a plausible supervisor liability claim since the allegation is conclusory and, as already explained, violations of the PREA are not actionable constitutional violations.

### 3. Leave to Amend

---

[4] In addition, A prison official's involvement in the grievance process, alone, is generally insufficient to establish the requisite personal involvement for liability under section 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

Here, the court will not grant Johnakin leave to amend on his claims based on violations of the PREA, the right to privacy in his cell, or sexual harassment because doing so would be futile. As for his equal protection claims, official capacity claims, and supervisory liability claims, the court cannot state at this time that Johnakin could never allege a plausible claim under these theories. Therefore, the court will dismiss those claims without prejudice and give Johnakin leave to file an amended complaint to the extent he can allege a plausible claim for relief.

### III.    CONCLUSION

For the foregoing reasons, the court will grant the IFP Application and dismiss the complaint. The court will dismiss with prejudice Johnakin's claims for violations of the PREA, the right to privacy in his cell, or sexual harassment. The court will also dismiss without prejudice Johnakin's equal protection claims, official capacity claims, and supervisory liability claims.

The court will issue a separate order.[5]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[5] This order will provide additional information on filing an amended complaint.