IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM T. JOHNAKIN, 3rd, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-2575 |
| | : | |
| OFFICER DROSDAK, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

SMITH, J.                                                          September 28, 2022

In a prior Memorandum, *see Johnakin v. Drosdak*, No. 22-2575, 2022 WL 2651969 (E.D. Pa. July 8, 2022), the Court dismissed the civil rights Complaint filed by William T. Johnakin, 3rd, a detainee in custody at Berks County Jail ("BCJ"). All claims based on (1) a violation of the Prison Rape Elimination Act ("PREA"), (2) a right to privacy in Johnakin's jail cell, and (3) sexual harassment were dismissed with prejudice, while Johnakin's equal protection claim was dismissed without prejudice. Johnakin was permitted the opportunity to file an Amended Complaint if he could cure the defects the Court identified in his equal protection claim. He has now returned with an Amended Complaint (ECF No. 8 ("Am. Compl.")) in which he attempts to reassert the above claims – including the claims already dismissed with prejudice – and again names as Defendants Officer Drosdak, BCJ Warden Jeffrey Smith and BCJ Chief Deputy Warden Stephanie Smith. Drosdak and Warden Smith are named in their individual and official capacities; Johnakin does not specify in which capacity he seeks to name Deputy Warden Smith. For the following reasons, the Amended Complaint will be dismissed with prejudice in its entirety.

## I.      FACTUAL ALLEGATIONS

Johnakin's allegations in the Amended Complaint are essentially the same as those in his original Complaint.  He claims that on June 9, 2022 at 7:30 a.m. he covered the glass window of his cell door indicating that he was using the toilet.  (Am. Compl. at 4.)[1]  Officer Drosdak, who is female, opened his door without knocking so that other inmates outside the cell could see Johnakin on his toilet, looked at Johnakin, and asked him if was "using the bathroom.  Hurry up I gotta search your cell["].  (*Id*.)  According to Johnakin, she watched as he finished on the toilet and would not let him put on pants or shoes.  (*Id*.)

Johnakin claims this is the third time he has had an incident with Drosdak in the past five years while he was detained for periods at BCJ, but does not specify the nature of the other incidents.  (*Id*.)  He asserts that Drosdak "does not respect any Black or [L]atino inmate."  (*Id*.)  The following day, Johnakin filed a grievance and PREA report about the incident but has received no response.  (*Id*.)  He alleges that Drosdak has a "history of disrespecting inmates and at least one other time of sexual assault on an inmate."  (*Id*. at 5.)  Warden Smith and Chief Deputy Warden Smith have allegedly "dealt with similar complaints like this about [Drosdak] and still have done nothing about it," which Johnakin asserts, "tells [Drosdak] this is ok to do to all inmate[s], Black, White [L]atino, male or female" and "gives her the right to violate every inmate even thoughs [sic] who aren't even convicted of a crime."[2]  (*Id*.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Johnakin also appears to assert that Warden Smith and Chief Deputy Warden Smith "tampered" with his original Complaint in this case.  He asserts he "filed this 1983 pro se civil suit on 6/21/22 and the jail never sent it into the Court.  This is tampering . . . ."  (ECF No. 8 at 5.)  The Court understands this allegation to be asserting a violation of Johnakin's right to access the courts.  A prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.  *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*)

In screening this access to the courts claim, the Court may consider matters of public record.  *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*,

Johnakin alleges violations of the United States and Pennsylvania Constitutions and the PREA.  (*Id*. at 3.)  He seeks money damages.  (*Id*. at 7.)

## II.     STANDARD OF REVIEW

Because Johnakin was granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Johnakin is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Johnakin again asserts claims for violation of his civil rights and the PREA.  The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42

---

452 F.3d 256, 260 (3d Cir. 2006)).  The public docket for this case confirms that Johnakin's original Complaint, his Motion for Leave to Proceed *In Forma Pauperis*, and his prisoner trust account statement were received by the Clerk of Court on June 27, 2022.  (*See* ECF Nos. 1, 2, 3.)  To the extent Johnakin asserts a separate claim against the Defendants for violating his right to access the courts by tampering with his original Complaint, the public record is conclusive that this claim is not plausible, and it will, accordingly, be dismissed with prejudice.

of the United States Code.  "To state a claim under § 1983, a plaintiff must allege the violation of

a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).

A.    **Official Capacity Claims**

Johnakin has again named at least Defendants Drosdak and Warden Smith in their official

as well as individual capacities.  As the Court previously explained to him, claims against county-

level officials named in their official capacity are indistinguishable from claims against the entity

that employs them, here Berks County.  *Johnakin*, 2022 WL 2651969, at *4 (citing *Kentucky v.

Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only

another way of pleading an action against an entity of which an officer is an agent.'") (quoting

*Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))).  Johnakin was advised

that to state an official capacity/municipal liability claim, a plaintiff must allege that the

defendant's policies or customs caused the alleged constitutional violation, *id.* (citing *Monell*, 436

U.S. at 694), and "must identify [the] custom or policy, and specify what exactly that custom or

policy was" to satisfy the pleading standard.  *Id.* (quoting *McTernan v. City of York,* 564 F.3d 636,

658 (3d Cir. 2009)).

Johnakin's official capacity claims were previously dismissed because he has failed to

identify any policy or custom of Berks County, that the Defendants acted pursuant to that policy

or custom, or that the policy or custom caused a constitutional violation.  *Id*. at *5.  However, he

was granted leave to file an amended complaint if he was able to cure these defects.  Because the

Amended Complaint again fails to identify a policy or custom of Berks County that caused

Johnakin to suffer a constitutional violation, the official capacity claims are again dismissed as

4

implausible.  As Johnakin has already been given an opportunity to cure the defects in his official capacity claims and has been unable to do so, the Court concludes that further amendment would be futile, and these claims will be dismissed with prejudice.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (holding that further amendment by a *pro se* litigant would be futile when the litigant "already had two chances to tell his story").

### B.    Individual Capacity Claims

#### 1.    PREA

Johnakin again asserts individual capacity claims based on violation of the PREA.  As the Court previously explained, the PREA does not create a private right of action against prison officials.  *Johnakin*, 2022 WL 2651969, at *5 (citing *Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action").  These claims were, accordingly, dismissed with prejudice.  *Id*.  For the reasons already stated, Johnakin's claims under the PREA are again dismissed with prejudice.[3]

#### 2.    § 1983 Sexual Harassment Claim

Sexual abuse or harassment can be a plausible constitutional claim under § 1983.  *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Whether sexual abuse of inmates by prison officials offends the Eighth Amendment is a matter of first impression in our Court.  Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution.").  Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the

---

[3] As the Court also explained previously, "prisoners have no legitimate expectation of privacy" in their cells.  *Johnakin*,  2022 WL 2651969, at *5, n.3.  For this reason, any claim that  Johnakin sought to pursue based on Defendant Drosdak opening his cell door without knocking was dismissed with prejudice.  *Id*.  In the Amended Complaint, Johnakin alleges along with the PREA claim that Drosdak watched him while he finished using the toilet and he has a right "to be able to use the bathroom in privacy."  (ECF No. 8 at 3.)  This allegation also fails to state a plausible claim since there is no right to privacy in a prison cell.  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984), *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).

plaintiff must allege facts plausibly establishing both the objective and subjective components of the claim. *Id.* at 475; *see also Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (holding that for a pretrial detainee to establish a basis for a Fourteenth Amendment violation, he must allege that his conditions of confinement amount to punishment); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) ("Unconstitutional punishment typically includes both objective and subjective components."). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Stevenson*, 495 F.3d at 68; *Ricks* at 475 (regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm") (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Ricks* at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

The conduct alleged by Johnakin was not sufficiently serious or severe to establish plausibly the objective component of a sexual harassment claim. First, while he might have covered his cell window for purposes of modesty, it remains that Johnakin had no expectation of privacy in his cell. Second, it is now common for male detainees to be supervised by female guards in detention facilities and equally common that corrections officials will observe detainees, whether of the same sex or not, while they are engaged in bodily functions. The conduct alleged by Johnakin also fails to plausibly meet the subjective prong of a sexual harassment claim. Johnakin concedes that Drosdak entered his cell for the legitimate penological purpose of conducting a cell search. Accordingly, this claim is also dismissed with prejudice.

### 3.    Equal Protection Claim

The Court construed Johnakin's original Complaint as possibly attempting to raise an equal protection claim because he asserted that Officer Drosdak is disrespectful to African American and Latino detainees. *Johnakin*, 2022 WL 2651969, at *6. This claim was determined to be implausible and dismissed without prejudice because Johnakin failed to allege that *he* is African American or Latino or that *he* was treated differently from other similarly situated detainees as a result of intentional discrimination based on *his* membership in a protected class.[4] He also failed to allege facts to support that Drosdak was motivated by racial animus when she entered his cell and watched as he finished using the toilet.

Johnakin has failed to cure these defects in his Amended Complaint. Rather, he has merely alleged once again that Drosdak "does not respect *any* Black or [L]atino inmate," (ECF No. 8 at 4 (emphasis added)), without asserting that he is a member of a protected class or that he was treated differently from other similarly situated inmates as a result of intentional discrimination. The equal protection claim will again be dismissed as implausible. The dismissal will be with prejudice since Johnakin has already been afforded the opportunity to correct these defects and failed to do so.

### 4.    Supervisory Liability Claims

Johnakin again seeks damages from Warden Smith and Chief Deputy Warden Smith because they are Drosdak's supervisors. This claim was previously dismissed without prejudice

---

[4] In the prior Memorandum, Johnakin was advised that, to allege a plausible equal protection violation, he had to allege "'that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class.'" *Johnakin*, 2022 WL 2651969, at *6 (quoting *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of N.Y.*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Alternatively, he was advised that a prisoner can assert an equal protection claim based on a "class of one" theory by alleging that he was intentionally treated differently from other similarly situated inmates and that there was no rational basis for the treatment. *Id*. (citing *Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (stating that "to state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment")).

because Johnakin merely alleged that the supervisory Defendants knew Drosdak was the subject

of inmate grievances and PREA complaints. *Johnakin*, 2022 WL 2651969, at *6.[5]  In his Amended

Complaint, Johnakin asserts that Warden Smith and Chief Deputy Warden Smith have allegedly

"dealt with similar complaints like this about [Drosdak] and still have done nothing about it,"

which Johnakin asserts, "tells [Drosdak] this is ok to do to all inmate[s], Black, White [L]atino,

male or female" and "gives her the right to violate every inmate even thoughs [sic] who aren't

even convicted of a crime yet."  (ECF No. 8 at 5.)

This allegation again fails to assert plausibly that Warden Smith and Chief Deputy Warden

Smith established and maintained with deliberate indifference a policy, practice or custom which

directly caused constitutional harm since he again fails to make any policy allegations.  Johnakin

also again fails to allege that these Defendants directly participated in violating his constitutional

rights or directed Officer Drosdak to violate them.  His vague allegation, without more, that the

supervisor Defendants "dealt with similar complaints *like this* about [Drosdak] and still have done

nothing about it," also fails to push his claim "across the line from conceivable

to plausible." *Iqbal*, 556 U.S. at 683.  To the extent the "like this" complaints involved grievances

or PREA allegations, the Court again concludes the allegation is not plausible since violations of

the PREA are not actionable constitutional violations, *Walsh*, 2017 WL 3835666, at *4, and

inmates have no right to a grievance procedure.  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d

Cir. 2005) (*per curiam*).  To the extent the "like this" complaints relate to claims of equal

---

[5] Johnakin was advised that, to state plausible claims based on supervisory liability, he had to allege the Defendants "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" or "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'" *Johnakin*, 2022 WL 2651969, at *7 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted)).  He was also told that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *Id*. (citing *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*)).

protection violations against Drosdak, Johnakin fails to allege with any specificity any other violation by Drosdak of which the supervisor Defendants had knowledge, or that they acquiesced in Drosdak's violations.  Since Johnakin has had an opportunity to amend and failed to cure the defects in his claim against the supervisor Defendants, this claim too will be dismissed with prejudice.

     **5.**      **Violation of the Pennsylvania Constitution**

In addition to federal constitutional claims, Johnakin asserts a new claim seeking money damages for alleged violations of the Pennsylvania Constitution.  However, as there is no private right of action for damages under the Pennsylvania Constitution, this claim is also dismissed with prejudice.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Johnakin's Amended Complaint in its entirety with prejudice.  An appropriate order follows.

BY THE COURT:


*/s/ Edward G. Smith*____
EDWARD G. SMITH, J.

9